IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| BETTY M. BROWN, | ) Civil Action No. 3:07-2943-JFA-JRM |
| Plaintiff, | ) |
| vs. | ) |
| WAL-MART STORES EAST, L.P., | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff, Betty M. Brown ("Brown") filed this action on August 27, 2007. She alleges claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.[1] Defendant, Wal-Mart Stores East, L.P. ("Wal-Mart"),[2] filed a motion for summary judgment on September 12, 2008. Brown filed a memorandum in opposition on October 30, 2008, and Wal-Mart filed a reply on November 10, 2008.

SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] On July 11, 2008, the undersigned granted Plaintiff's motion to amend the caption of the complaint to correct the name of Defendant from Wal-Mart Stores, Inc. to Wal-Mart Stores East, L.P. See Doc. 25.

states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard

2

of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

FACTS

1. Brown, who was born in 1940 (see Brown Dep., Ex. 1), was approximately sixty-six years old at the time of the alleged incidents. She began employment with Wal-Mart at the Harbison, South Carolina Store in October 2000 as a full-time cashier. See Brown Dep. 13, 23.

2. In order to qualify for full-time status, an Associate must work a minimum of thirty-four hours a week. Part-time hours range from sixteen hours per week to thirty-three hours per week. Certain benefits are only available to full-time Associates. Ronald Alexander Tisdale ("Tisdale")[3] Dep. 37-38.

3. Cashiers are assigned shifts through Wal-Mart's computerized Customer Service Scheduling System, which generates shifts based on sales forecasts entered into the system by the Store Manager. The computerized system then assigns cashiers to these shifts based on the hours each cashier has indicated he or she is available to work. The length of each shift also varies from week to week depending upon expected sales. Tisdale Dep. 23-24, 28.

---

[3]Tisdale is personnel manager at the Sumter Wal-Mart Store. See Brown Dep. 28; Defendant's Motion for Summary Judgment at 3.

4. In June 2002, Brown voluntarily transferred to the Wal-Mart store in Sumter, South Carolina. Brown Dep. 13.

5. On June 2, 2003, Brown filled out a Customer Service Scheduling Availability form, indicating that her hours of availability were from 8 a.m. to 4 p.m. each day except Sunday and Thursday (when she indicated she had no availability). Brown Dep., Ex. 15.

6. In January 2005, Brown was transferred from her job as Garden Department Cashier to the position of Front-End Cashier. Her hours were reduced.

7. In April 2005, Justin Morris ("Morris"), Assistant Manager in charge of Front End Cashiers, became aware that Brown was one of the Associates who, during the previous twelve weeks, had worked insufficient hours to qualify for full-time status. Morris Aff., Paras. 1 and 6; Defendant's Motion for Summary Judgment at 6.

8. Morris explained to Brown and other Associates that if they wished to maintain full-time status, they would need to work more hours, and that doing so would require increasing the number of hours they were available to work. Morris Aff., Paras. 4 and 6. He states that Brown did not increase her availability to work. Morris Aff., Para. 6.

9. Brown recalls this conversation with Morris, but did not understand why she was required to change her status. Brown Dep. 26-27. Brown changed her status from full-time to part-time. This reduced some of her benefits. See Brown Dep. 28-29.

10. Brown states that Tisdale promised that she would receive twenty-eight hours per week, but she did not and instead saw her hours reduced to less than ten hours per week. Brown Dep. 28, 42.

11. Brown asked various Sumter Wal-Mart managers to increase her hours, but was told that the home office made the schedule and that they could not override the computer system.[4] Brown Dep. 31-34, 36- 47.

12. A newspaper, the Sumter Daily Item ("Item"), ran a series of articles on poverty in October 2006. Brown wrote an email to the Item on October 6, 2006, in which she stated that she worked at Wal-Mart, she brought home a paycheck for two weeks pay in the amount of $42.42, and she considered that to be poverty. Brown Dep. 56.

13. On October 12, 2006, Brown filled out an initial questionnaire with the South Carolina Human Affairs Commission ("SCHAC"). In the questionnaire, she wrote that she could not "fully say if [her] complaint is [about] age or making too much money." Brown Dep., Ex. 12.

14. In October 2006, Wal-Mart instituted a revised scheduling policy to allow cashiers to designate the hours they preferred to work (preferred hours) in addition to those hours they were available to work.

15. Several meetings were held with Cashiers to explain the changes to the computerized scheduling system. The meetings were led by Marcia Keels ("Keels"), an Assistant Manager of the Sumter Store. Sandra Champ ("Champ"), the Head Customer Service Manager over

---

[4]Brown also wrote a "to whom it may concern letter" dated October 29, 2005, which she sent to Wal-Mart headquarters, in which she asked what the minimum number of hours a week were for an employee. She wrote a letter, dated February 1, 2006, to Lonnie Thigpen at Wal-Mart headquarters, in which she stated that she had changes to her work schedule beginning on January 15, 2005; was scheduled for only nine hours one week in January; and her salary was below the poverty level in 2004 and 2005. Brown Dep., Exs. 3 and 5. She states that she did not receive a response to her letters. Brown Dep. 108.

the Front End of the Sumter Store, also attended. Keels Aff., Paras. 1-3; Champ Aff., Paras. 1-3.

16. At the end of the meetings, Associates were asked to complete a new availability form listing their preferred hours and available hours. The information was entered into the computerized scheduling system. Keels Aff., Para. 4.

17. During the meetings it was explained to Associates about preferred hours and hours available to work and how a cashier's availability to work would affect the hours scheduled to work. Associates were allowed to ask questions during and following the meetings. Champ Aff., Para. 4.

18. On October 13, 2006, Brown completed an Associate Personal Availability/Preferred Hours Request Form in which she indicated that her personal availability was 8 a.m. to 4 p.m. every day except Thursdays and Sundays and that her preferred hours were those same hours. On the form she also answered that the minimum hours she requested daily was seven and weekly was thirty-five (this was left blank on the June 2003 form). Brown Dep, Ex. 14, 15.

19. After that time, Brown's scheduled work hours increased, but not to the level of full-time. Brown Dep. 56, 108.

20. On December 11, 2006, Brown filed a Charge of Discrimination with SCHAC and the Equal Employment Opportunity Commission ("EEOC"). Defendant's Ex. J. She received a Dismissal and Notice of Right to Sue dated July 17, 2007 from the EEOC.

MOTION FOR SUMMARY JUDGMENT

Brown alleges that she was discriminated against based on her age and that she was subjected to a hostile work environment based on her age. Wal-Mart contends that it is entitled to summary

judgment because Brown failed to exhaust her administrative remedies as to her hostile environment claim, she fails to establish a hostile environment claim, and she fails to establish a claim for age discrimination.

A. Age Discrimination

Brown alleges that she was discriminated against based on her age because she was demoted to part-time status, subjected to a reduction in the number of hours she was scheduled to work, and suffered a loss of some of her benefits. Wal-Mart contends that Brown fails to establish a prima facie case of age discrimination and it has offered a legitimate, nondiscriminatory reason for its actions which Brown fails to show is pretextual.

"[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Financial Services, Inc., __ U.S. __, 129 S.Ct. 2343, 2352 (2009). Under the alternative burden-shifting method of proof of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),[5] a plaintiff may establish a prima facie case of age discrimination under the ADEA by showing that: (1) she is a member of the protected class; (2) her employer took an adverse employment action against her; (3) she was performing her job to the legitimate expectations of her employer; and (4) she was either replaced by someone outside the protected class

---

[5]Brown has not alleged that she has any direct evidence of discrimination. The Supreme Court recently noted that the text of the ADEA does not authorize a mixed-motive age discrimination claim. Gross v. FBL Financial Services, Inc. 129 S.Ct. at 2350. It was also noted that the Supreme Court "has not definitively decided" whether the McDonnell Douglas framework, first developed in the context of Title VII cases, "is appropriate in the ADEA context." 129 S.Ct. at 2349 n.2. In the absence of further direction from the Supreme Court, this undersigned must follow Fourth Circuit precedent, which applies the McDonnell Douglas framework to ADEA claims. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004)

or similarly-situated employees outside of her protected class were treated more favorably. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004). If the Plaintiff can establish a prima facie case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions against the Plaintiff. Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981)(this is a burden of production, not persuasion). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

    (1)    Prima Facie Case

Wal-Mart does not appear to dispute that Brown has established the first three prongs of her age discrimination case (that she is a member of the protected class, was subjected to an adverse employment action, and was performing her job to its legitimate expectations), but contends that Brown fails to establish the fourth prong (that she was replaced by someone outside the protected class or others outside the protected class were treated more favorably under similar circumstances). The company argues that Brown fails to establish her prima facie case of age discrimination because she herself was unsure whether she was the victim of age discrimination[6] and has produced no evidence giving rise to a reasonable inference of discrimination. Brown appears to allege that she meets the fourth prong of her prima facie case because younger cashiers received more favorable treatment. Specifically, she claims that younger cashiers were treated more

---

[6]As noted above, Brown wrote on her initial questionnaire for SCHAC that she was uncertain whether her claim was about age or her making too much money. Brown Dep. Ex. 12. Brown testified that because she thought her rate of pay was higher than other Associates, she thought Wal-Mart might be reducing her hours in order to save money. Brown Dep. 104-105.

favorably because they were scheduled for more hours than she received, management did not schedule her for more hours when she requested more, she noticed on the Scheduling Board that younger employees received substantially more hours than she received, and she received less than ten hours a week sometimes while other cashiers complained they received too many hours.[7]

Brown fails to establish a prima facie case of age discrimination because she has not established the fourth prong of her prima facie case. Although she claims that younger Associates received more hours, she has not shown that any of these Associates were similarly situated to her as she has provided nothing to show that they had similar available hours. Brown admitted that she was unaware of what hours the other Associates indicated they were available to work. See Brown Dep. 173-174.

Brown appears to argue that she has shown discrimination because she saw Henry Jones change cashier hours on the Scheduling Board,[8] but he refused to add hours to her schedule. Brown Dep. 36-37. Tisdale and William Newman ("Newman"), the Sumter Store Manager (see Brown Dep. 42), testified that it was not uncommon to adjust schedules on the Scheduling Board when an Associate was unable to work because of illness, family emergencies, or unavoidable situations. See Tisdale Dep. 35-36, Newman Dep. 14. The changes were made by the Associate's Assistant

---

[7]In her deposition, Brown appears to allege that she was discriminated against because she was assigned to short registers (those for persons with twenty items or less) and that this resulted in a lower items per hour ("IPH") which led to her being scheduled for shorter hours  See Brown Dep. 34-36. Champ, however, provides that working an express checkout or short register has no effect on a cashier's IPH since the cash register only tracks items while a cashier is signed on during the transaction and hitting the "total" key at the end of the transaction stops the clock until the cashier signs on for the next transaction. Champ Aff., Para. 6.

[8]Jones is an Assistant Manager over the Front End of the Sumter Store. See Jones Aff., Para. 2.

Manager, noted on the Scheduling Board, and initialed by the Assistant Manager and the Associate. Brown Dep. 37, 45; Tisdale 36. Assistant Managers were are not allowed to add hours to the Associate's schedule over and above the number of hours the computerized scheduling system assigned. Jones Aff., Para. 4.

  (2) <u>Legitimate, Nondiscriminatory Reason</u>

    Wal-Mart asserts a legitimate, nondiscriminatory reason for Brown's decreased hours, that the computer system assigned hours to Associates based on availability without reference to age. Additionally, Wal-Mart provides that the initial reduction in Brown's hours in January 2005 reflected the sharp decline in business following the Christmas holidays (Newman Dep. 7; Tisdale Dep. 49), fewer cashiers were needed at that time because the Store (which had earlier converted to a SuperStore which resulted in varying scheduling needs) was better able to schedule cashiers based on data from the previous year regarding store traffic (Tisdale Dep. 48-49), and hours increased again in October 2006 because of the approaching holiday season. The October 2006 change in the scheduling system generated more shifts during the middle of the day (times that would fit Brown's available hours of 8 a.m. to 4 p.m.) to cover lunches and breaks and provide better service to lunch-time shoppers. Tisdale Dep. 63, 66. Tisdale testified that there is no human involvement in the assignment of shifts, stating that "[a]s we key those forecasts in, we go in and generate and right then and there about an hour later it gives us the shifts...there's no human aspect of it that assigns the shifts." Tisdale Dep. 34-35.

  (3) <u>Pretext</u>

    Brown argues that she has shown pretext because her hours increased after the Item ran an article on poverty detailing her plight and after she filed a Charge with SCHAC.

Plaintiff's Opp. Mem. at 7. She also appears to assert that she has shown pretext because Wal-Mart's scheduling forms were inadequate and her requests to Wal-Mart managers for additional hours went unanswered.

Brown alleges that her "hours increased after the Sumter Daily Item Newspaper ran an article on poverty detailing [her] plight." Plaintiff's Opp. Mem. at 7. She has not, however, provided any evidence that the alleged article (she has not provided a copy of the article) concerned her. In her deposition, Brown testified that she emailed the Item after an article about poverty appeared in the paper, but she did not state that the article in the Item was about her. See Brown Dep. 56, 116, 177-178. Further, she has provided no evidence that any of the decisionmakers at Wal-Mart knew about the article in the Item or about any email from Brown to the newspaper. Tisdale and Newman both testified that they were not aware of any such article in the Item. Tisdale Dep. 53, Newman Dep. 15. Additionally, the meeting which occurred on October 13, 2006 was part of a company-wide plan instituted by Wal-Mart to revise the scheduling system for Cashiers. See Tisdale Dep. 63; Jones Dep. 16; Defendant's Motion for Summary Judgment at 8. Brown has not provided anything to show that this company-wide plan was instituted in response to the Item article.

Brown also argues that she has shown pretext because her hours increased after she filed her Charge with SCHAC. Her Charge, however, was not filed with SCHAC and the EEOC until December 11, 2006 (after her hours had increased - see Brown Dep. 56, 108, 177). Plaintiff's Opp. Mem., Ex. 6 (Charge). Wal-Mart provides that it was not aware of Brown's Charge until January 11, 2007 (date the Charge was stamped as received by "EEO Legal"). See Defendant's Reply Brief at 7; Defendant's Motion for Summary Judgment, Ex. J.

Brown also argues that she asked Wal-Mart managers for more hours (Plaintiff's Dep. 38, 42), indicating that she was willing to work, but her requests went unanswered. She has not, however, provided anything to dispute the testimony of Wal-Mart managers that they could not provide more hours than those given by the computerized scheduling system. Additionally, Brown has not shown that she added any additional available hours or attempted to change her available hours in order to receive more scheduled work hours.

Brown appears to argue that Wal-Mart's reason for decreasing her hours is pretextual because the forms used to indicate availability were confusing to her and the form she completed in June 2003 "does not state that plaintiff would not be available to work at times other than those listed." Plaintiff's Opp. Mem. at 7. The June 2003 form, however, contains spaces to indicate availability and asks the associate to indicate any reoccurring times that he or she is not available to work. Additionally, the form provides:

> Wal-Mart recognizes that opportunities may arise that require an Associate to change their availability. We respect your request to do so. However, we want to remind you how our scheduling process works. We must ensure that we have trained Associates available when our customer traffic is heaviest. Wal-Mart tracks information about where and what time of day our customers are shopping. This aids management in scheduling Associates properly to assist our customers. Your open availability is important to this process. **Changing your availability could affect the number of hours your receive.**

Plaintiff's Dep, Ex. 15 (emphasis in original). Morris states that he explained to Brown and other Associates that receiving more hours would require increasing the number of hours they were available to work and he allowed Associates to experiment with incremental increases in availability to determine how many additional hours would result, but that Brown was not willing to increase her availability. Morris Aff., Paras 4-6. Jones states that Brown complained to Champ about her hours, who in turn consulted with Jones. He found that Brown's availability was limited to certain

12

hours and told Brown that if she wanted to get more hours she had to open up her availability so the system could schedule her for more shifts, but she stated she did not want to open up her availability. Jones states that on several other occasions he had similar conversations in which he told Brown that she needed to open up her availability by doing a change of availability form and submitting it to the Store Manager to receive more hours, but she did not do so. Jones Dep. 11, 14-15. Although Brown claims to have not understood the system or the general concept that providing more hours of availability generally increased the number of hours that Wal-Mart could schedule an Associate, she fails to show that Wal-Mart's legitimate, nondiscriminatory reason is false or that age was the "but-for" cause of the alleged adverse employment action(s).

B.     Hostile Work Environment

Brown alleges that she was subjected to a hostile work environment because she was subjected to unwelcome conduct in the form of Defendant continually reducing her hours to the extent that for a two week pay period she received a check for merely $35.24 and that she received only $42.42 for another pay period. Plaintiff's Dep. 42. She claims that she received reduced hours while younger, less-experienced employees received more hours. Brown alleges that consistently receiving reduced hours permeated her work environment and altered her conditions of employment in that she was forced to take a demotion from full-time to part-time employment and suffered a reduction in benefits. She claims that this is imputed to Wal-Mart because Wal-Mart was responsible for scheduling her for reduced hours. Wal-Mart contends that Brown failed to exhaust her available administrative remedies as to her hostile environment claim and alternatively that she fails to establish a hostile environment claim because she has not shown that the alleged harassment was based on her age or that it was sufficiently severe or pervasive.

Wal-Mart argues that Brown made no claims for a hostile work environment in her Charge. In her Charge, Brown checked a box indicating that the alleged discrimination was based on age and wrote:

> I. Through December 1, 2006, I have been subjected to discriminatory terms and conditions of employment
> II. The respondent has given no reason for subjecting me to discriminatory terms and conditions of employment.
> III. Through December 1, 2006, I have been subjected to discriminatory employment in that similarly-situated younger employees have been given more hours than me.
> IV. I therefore believe that I have been discriminated against because of my age 66...

Defendant's Motion for Summary Judgment, Ex. J. In her opposition memorandum, Brown does not provide anything to show that she included a hostile environment claim in her Charge, but merely argues that she has exhausted her administrative remedies as to her hostile work environment claim because she properly filed charges with state and federal agencies as required by law, received right to sue letters, and timely brought her action.

Brown fails to show that she exhausted her available administrative remedies as to her hostile environment claim. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent ... lawsuit." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (discussing Title VII: see also Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (If "the claims raised ... exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.") (discussing Title VII). As noted above, there is no indication that Brown included a hostile environment claim or any claim of harassment in her Charge and she has provided

nothing to show that her hostile environment claim is reasonably related to the claims in her Charge or that these claims were developed in the investigation of the Charge.

Even if Brown had exhausted her administrative remedies, she fails to establish a hostile environment claim. To make out a hostile work environment claim under the ADEA, a plaintiff must adduce evidence that "(1) he experienced unwelcome harassment; (2) the harassment was based on his [age]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006)(citing Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)).

Here, Brown fails to show that any perceived harassment was based on her age. "[C]onclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment." Causey v. Balog, 162 F.3d 795, 802 (4th Cir.1998). When asked if she could recall any conduct, other than being given fewer hours and placed on a short register, that constituted a hostile work environment, Brown replied: "Let's see, not offhand [,] I can't think of any." Brown Dep. 76. As discussed above, Brown has presented nothing to show that similarly-situated cashiers who were scheduled for more hours had the same or less availability than she did or that her decrease in hours was based on her age. She also fails to show that assignments to short-registers results in a lower IPH or that her assignment to certain registers was based on her age. When asked whether anyone at Wal-Mart ever made comments to her about her age that she regarded as hostile, Brown responded: "Not to my knowledge." Brown Dep. 75.

## CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 31) be granted.

                                        Joseph R. McCrorey
                                        United States Magistrate Judge

July 21, 2009
Columbia, South Carolina